Ms. Maturowski, before we begin, I would like to state the following. I would like to disclose to both parties that one of my career law clerks is Mr. Cameli, who is sitting at council tables, sister. Now either I nor my other law clerks have discussed this case with Ms. Cameli, nor will we discuss it with her so long as the case is pending in this court. In other words, she is walled off from any consideration or discussion of this case, and I have made that abundantly clear to everyone in my chambers that no matter how much she knocks on that wall, she is not coming out. I don't view this situation as one in which I'm obligated to recuse myself, but in the interest of full disclosure, I wanted to make sure you're aware of it and how I plan to handle it. And if either of you has any problem, I will go and sit and read the newspaper. How do you feel, Mr. Cameli? And don't you speak to your sister. That's an order. Okay, go ahead. Good morning, and may it please the court. I'm Kate Maturowski for the appellant, Lori Bebo. Your Honors, my client, Ms. Bebo, is currently the subject of an SEC enforcement action that was instituted pursuant to an unconstitutional act of Congress in Dodd-Frank. She brought an action in the district court below under its federal question jurisdiction, asking it to do one of the things that federal courts are fundamentally meant to do, and that is consider the constitutionality of a federal law. Now, Ms. Bebo's claims to the district court were these. First, that the entire administrative enforcement process of the SEC against unregulated citizens since the 2010 passage of Dodd- Frank is unconstitutional because the federal law that enables those proceedings violates the Fifth Amendment. And then next, that the ALJs who preside over every SEC enforcement proceeding hold a position that is unconstitutional under Article 2. Though the SEC's brief reads as if Ms. Bebo is challenging agency action or an agency order, she's doing no such thing. The challenges she brings is to the SEC's enabling legislation and the very existence of the SEC process itself since Dodd-Frank. Now, the district court below erroneously held that it could not exercise its 1331 jurisdiction because the administrative review provisions of the Exchange Act preclude it from doing so. By its plain terms, those administrative review provisions, which are at 78Y, apply to two types of suits. Those who are aggrieved by a final order of the commission after an enforcement action, or those who are adversely affected by certain commission rules, can seek review of those final orders or those rules in the relevant Court of Appeals. Now, the nature of her constitutional claims seems to fit fairly comfortably within the Free Enterprise McNary line of cases. But one sense in which this case is different from a case like Free Enterprise is that there is, in fact, a pending enforcement proceeding against Ms. Bebo, so there's no question of her having to await future action by the SEC in order for her to assert her claims. Even if the SEC doesn't have expertise in these claims, it might not reach them given the availability of appellate claims decided if she cannot be heard now in the district court, is she? Well, you're right, Your Honor. There has been an enforcement proceeding already instituted against Ms. Bebo, but I will note that the Supreme Court in Free Enterprise and the Supreme Court in other cases considering these types of claims has never said that the institution of an enforcement action is a dispositive factor in determining whether jurisdiction lies in the opposite. That is, it supported an injunction against pending administrative proceedings on this kind of theory. Elgin comes to mind. Right, the court has noted in making its decisions on jurisdiction that in some cases, like in Elgin, that the respondent could go through the process and get fair review, but that wasn't the dispositive factor in that case or in Free Enterprise or in Thunder Basin. And I'll give you an example why. If we compare the procedural posture of Thunder Basin to Free Enterprise, it was the same. In both of those cases, there was no enforcement action currently pending. In Thunder Basin, the mine operator had not received a citation yet. He had received a letter noting that he should either comply with the Mine Act or face a citation, but no citation had been issued. In Free Enterprise, again, no enforcement action, as Your Honor noted, was currently pending. But the outcome on jurisdiction was different in those cases. The Thunder Basin court said that the respondent had to invoke an administrative process in order to have his claims heard. But on the other hand, in Free Enterprise, the court said, no, we're not going to make the respondent go through this process. The claims are proper in district court. So you think Thunder Basin was overruled? No, I don't, Your Honor. I think that the dispositive factor on jurisdiction was different. It's not whether or not an The turning point of jurisdiction is the type of claim presented. The type of claim presented in Thunder Basin was fundamentally different from the type of claim presented in Free Enterprise and McNary and those lines of cases, and it's different from the kind of claim that Ms. Bebo presents. If I could follow up for just a second, because I understand, maybe I'm missing something here, but I understand your theory to be, well, these statutes are facially unconstitutional. Nothing needs to be really explored. They can be decided, this can be decided on its face. Hence, we like Free Enterprise. The Free Enterprise Fund case, we want to go forward. But I see in Elgin, the Supreme Court seems to expressly reject drawing lines between facial and as applied or other categories of constitutional claims for purposes of doing, for short-circuiting, in essence, the ordinary administrative process. That's right, Your Honor, and it's not just because she's making a facial challenge that she belongs in district court. It's because her challenge is to the overall structure and authority of the agency itself, not to any law that she's been accused of violating. So if I could give you an example. If she was going to the district court, asking the district court to consider whether Section 10b of the Exchange Act, which in the administrative proceeding she's been accused of violating, whether that section was facially unconstitutional, that would be a claim more like the plaintiff's claim. She's saying that the appointments of the administrative law judges are facially unconstitutional, right? Right, and the remedy that she would get if she's right, that the ALJs are appointed unconstitutionally and that Dodd-Frank is unconstitutional, the remedy that she would get would be for the SEC to return to the procedures that it had before Dodd-Frank and bring the enforcement action in district court. She wouldn't, if she was successful on her claims, be found not to have violated securities laws. She's just asking that her claims be heard under the right procedures, the right process, the same way that the McNary plaintiffs were asking for relief and the Free Enterprise plaintiffs were asking for relief. That... Let me ask you about her due process and equal protection challenges to the SEC's form selection authority. Could those challenges be viewed as somehow intertwined with the merits of the administrative proceeding, which if it goes against her, will one day be subject to review here in the Court of Appeals? Right, you're right, Your Honor, and they're not, which is actually the dispositive factor. It's the reason why her claims are proper under 1331 in the district court and they're not the kind of claims that are meant to be reviewed in the agency first and then in the Court of Appeals. Her equal protection and due process claims challenging Dodd-Frank state that the law that enables the SEC to choose its forum is an unconstitutional violation of equal protection and due process. It has nothing to do with whether or not she's violated securities laws. If she's found liable of a violation or not, affects in no way her claim that the law enabling the entire process is unconstitutional. The remedy she seeks is a procedural one, not a substantive one. And again, I'll bring it back to what I said earlier, which is the Supreme Court's judgment on this issue falls into two lines of cases and on the one hand is Elgin and Thunder Basin and the dispositive factor for the court in determining that jurisdiction was not appropriate in the district court in those cases was the type of claim that those those plaintiffs brought. The Thunder Basin plaintiff came to the district court asking it to interpret, asking the district court to interpret its rights under the Mine Act. It wanted substantive relief from the court. It wanted the district court to make the Same with the Elgin plaintiffs. They went to the district court asking the district court to decide whether the Selective Service Act was constitutional and the remedy they sought was reinstatement into their federal positions and back pay, which is the remedy that was regularly sought and given out by the Merit Service Board, the agency in that action. Now if you contrast that to the relief sought by the McNary plaintiffs and the Free Enterprise plaintiffs, the McNary plaintiffs went to the district court not asking the district court to applications should be granted. They went to the district court saying the procedures that the INS uses in making those determinations are unconstitutional. And same with the Free Enterprise plaintiffs. They went to the district court not asking the district court to decide that it as an accounting firm didn't violate federal laws. It asked the court to decide whether the board that makes those determinations is constitutional. Let me try a different slice at the cases and see how you respond. Sure. It looks to me like Free Enterprise Fund and McNary are two relatively rare cases in which obtaining judicial review would in essence require the plaintiff to take enormous risks. Neither one was facing imminent administrative proceedings, unlike both plaintiff facing an administrative proceeding in which she can raise these issues and is raising these issues, right? So given the general aversion to multiplying proceedings, I'm troubled by your approach and troubled by just how clear the line is that you're trying to draw between claims that can be heard in First of all, I would agree that the kinds of claims brought in McNary and Free Enterprise are of a rare type because those claims challenge the overall structure and authority of the agency. And so that determination, whether Dodd-Frank is constitutional, can be decided in one case. It's not the kind of claim that respondent after respondent will bring to the court based on their individual circumstances. So I agree with your honor that those those cases are of a rarer kind. They're also rare because there was no other avenue. Well, you're right, your honor, that at the time in both of those cases no administrative proceeding was pending. But like I said earlier, that wasn't a determinative factor and it's because we can compare to Thunder Basin, the procedural posture of that case. But I will also submit to the court that this is a case where she doesn't have meaningful review if she is meant to go through the agency process. First of all, because by the time she reaches the Court of Appeals, which would be the first court competent to consider her claims, because the Commission has said that it doesn't have the authority to declare the law unconstitutional as she asks. By the time she reaches the Court of Appeals, it won't be able to give her the relief she seeks, which is an injunction of the process itself. And that's if she gets to the Court of Appeals. And she might not if she's successful in defending herself on the merits of the securities allegations pending against her. In that case, she'll have no opportunity to go to a to a Before you sit down, Ms. Bananowsky, I want to run at least one prospect by you, perhaps from the outfield, which is, as I was looking at the procedural problems here, I was reminded of younger abstention. Now, that has a federalism dimension that we don't deal with here, but in younger district courts not to enjoin state criminal proceedings or state civil proceedings that are akin to criminal prosecutions. And where the state is a party, the prosecutor, the proceeding is in aid of or closely related to criminal statutes, those characteristics all seem to fit what the SEC is doing here. Well, Your Honor, if Ms. Bebo is allowed to bring her constitutional claims in that doesn't automatically mean that the agency process currently pending will stop. That's the relief you want. Ultimately. I thought you wanted an injunction early on to stop the proceeding. Well, we did ask the district court for a preliminary injunction to stop the proceeding, but there's a burden to meet, which is we have to show that the law is that we are likely to succeed in proving to the court that the law is unconstitutional. So, Your Honor, the administrative proceedings pending against Ms. Bebo will only stop if we show the court that the law that allowed them to happen in the first place is unconstitutional, and in that case they should stop. Well, that's the same argument can be made in every younger case. You know, without having briefed the younger issue, I can't go further into that, but I would note that her claims seek procedural relief and not structural relief. Thank you. Thank you. Mr. Stern, good morning. Welcome back to Chicago. You've been spending a lot of time here lately. As I said yesterday in an argument, not always a pleasure. May it please the court, the district court correctly held that the proceedings being presented in this district court lawsuit and have also been presented as affirmative defenses in the SEC proceeding can be resolved by this court or by the D.C. Circuit upon conclusion of the administrative proceedings. How is this case meaningfully different from free enterprise in terms of the nature, the nature, sorry, of the challenges that she is asserting? As I understand it, her constitutional claims have nothing to do with the merits of any statutory or regulatory violation she may have committed, but rather with the SEC's power to choose the forum and the ALJ's power to resolve the alleged violations. Aren't those challenges wholly collateral to the merits of the administrative proceeding? No, Your Honor, and I've got a couple of reasons for that. First, in free enterprise fund what you had were closely regulated parties, which Ms. Bebo is not. I dealer, she's not subject to the whole variety of registration and other requirements that say the plaintiffs in free enterprise were subject to, and they were saying that the regulatory entity that had been established to oversee their day-to-day business was unconstitutional. Now there's no claim here that the SEC is unconstitutional. The claim is that a particular proceeding is unconstitutional, and the relief that is sought is a dismissal of a proceeding against a individual. That is the classic kind of case that has to go through the administrative process, and there are lots of claims that could be categorized as collateral that wouldn't, like in the sense this would be collateral, that wouldn't go to district court. For example, if there was a claim of bias or some other fundamental impropriety in the proceeding, the remedy, if any, would be a mandamus action in this court, because it's this court that has the ultimate jurisdiction, and this court could, if appropriate, and obviously mandamus standards are stringent, but that's where you bring that kind of claim. That's what the DC Circuit's track line of cases tracks. You know, as constitutionally based claims, it seems to me that these are the sort of claims that are beyond the expertise of an administrative agency to review. I mean, administrative agencies, in contrast to the judiciary, don't typically engage the merits of constitutional claims. Yes, Your Honor, but in Elgin, the question was the validity of the Selective Service Act, and the Civil Service, sort of like the Merit Systems Protection Board, had any expertise in the constitutionality of the Civil Service, the registration requirement, and in both Elgin and in Thunder Basin, the Supreme Court explicitly said it doesn't matter whether the agency can rule on the issue. I mean, that was a holding in both cases. The question is, must the resolution wait until such time as the SEC enters a final order, which will then be subject to review in the Court of Appeals, or can she proceed with those claims immediately in the District Court? I mean, the Supreme Court sometimes forces a petitioner to await review of a final administrative order when the constitutional question goes to the merits of any action the, oh boy, the administrative agency has taken against a petitioner. I mean, that's what was true in Elgin, where the constitutional challenge was addressed to the statute, the Military Selective Service Act, that discharge of the petitioners, but that's not the case here. The constitutional challenges, it seems to me, are directed to the authority of the SEC to choose the forum and to the authority of the ALJs, rather than the substance of any statutory or regulatory provisions that the agency might find she has violated. Your Honor, with respect, I don't think that's accurate. Oh, when you say with respect, you don't really mean it. Oh, no, I surely do, Your Honor. What's being objected to here is the amendment to the Dodd-Frank, that was in the Dodd-Frank Act to the securities laws, that said explicitly the SEC can invoke the administrative process, which previously had only been available when it was pursuing charges against a regulated entity, and the claim here is that that provision, this is not a exercise of the Commission, sort of on its own, without express congressional authority. The argument here is that this statutory provision is unconstitutional. You have to hold that in order to rule for plaintiff in this case, so that's why it's no different than Elgin. In both cases, we have the issue, and I think that the key thread of the Supreme Court's decision has most clearly not been the type of claim that's been involved. I mean, the type of claim sort of can be, like when has been constitutional, the Supreme Court has said it doesn't matter if it's constitutional, it doesn't matter if the agency can pass on it. What the real thread has been, and I think that's true in Free Enterprise as well as Elgin, the most recent two, is the question of is there meaningful review. That was the absolute touchstone in Elgin, and if you look at the Supreme Court... But there's a real sense, that to me at any rate, where in which she may be prejudiced by having to go through the entire administrative process and await appellate review before the merits of her constitutional challenges are addressed. I think the FTC versus Standard Oil sort of addresses that's not a constitutional claim, but it was a claim that the FTC was acting not because it had properly made a finding about a probable violation, but it was acting in response improperly to political pressure, and the Supreme Court said no, there's no final agency action, and there is no irreparable harm. The fact that you're going to have to go through these proceedings is not irreparable harm, and this court and our O'Donnelly and Sons said exactly the same thing, and there it was again a collateral issue to some extent. You had a question, the issue there was did you have collateral estoppel based on a went to district court, tried to get a preliminary injunction, failed an instituted administrative proceedings, the plaintiffs said wait you can't do that, you're collaterally estopped, and this court said I recognize that this could be a very long road, and that you may well prevail at the end, but you have to go through that road. Well let's, let's, let's see, let's see, let's suppose that we affirm Judge Randall's decision that she later prevails on the merits of the enforcement action before the ALJ and the SEC. At that juncture, she has nowhere left to make her constitutional challenges, does she? I mean she'll have one, but assuming for the sake of argument that her constitutional claims are meritorious, she'll have one in a forum that the SEC in her, chose him properly, and before an ALJ who lacked Article 2 authority to resolve the matter, in that sense will she have been harmed irreparably? No, I don't think so, that's in ALGEN and in FTC versus Standard Oil, what the Supreme Court says is one thing about going through the agency process is we may avoid the necessity of having to address the constitutional question. That's a reason to not allow a circumvention of the administrative proceeding, it's not a reason to say we want to resolve the constitutional question, even if in fact there's not going to be a finding that Ms. Beebo violated the securities laws. Is it correct, Mr. Stern, that there are a number of situations in which citizens of the United States are required by law to wind up defending themselves in procedures to which they may object? One that comes to mind that we see a lot of are basically claims that people have been criminally prosecuted without probable cause, and the Supreme Court has rejected that as a due process challenge, and so the criminal process gives you, you defend yourself, that is due process, and I will throw out for you as well the younger analogy, not because I believe the younger abstention doctrine applies directly, but there are some important parallels I would submit, and I'd, but if either counsel think there are distinctions, I'd be interested in hearing about them. Your Honor, as your Honor mentioned, of course the younger doctrine is a federalism based doctrine, but I think that it is analogous in the way that the jurisdiction, what Congress intended was that there would be, the Court of Appeals would have jurisdiction in cases in which administrative proceedings are brought by the SEC, and an action that interferes with the reviewing court's ultimate jurisdiction should not be accepted. I mean that you do not have collateral attacks on ongoing proceedings, so I do think that it's analogous even though it's a administrative law basis rather than a federalism basis. Could I ask you about, this may dabble a little bit into the merits here, as I read free enterprise fund it looked as if the accounting board had some authority that it could exercise immediately without needing commission approval. Could you tell me, and if plaintiff's counsel can address this as well, I'd be interested in what powers administrative law judges for the SEC have that are not subject to commission approval. I'm not aware of any, your Honor, and we outlined in the statement section of our brief the way that the administrative law judges operate in terms of their SEC oversight with the SEC essentially retaining plenary control over the SEC ALJs and indeed has the power, the ALJs essentially operate sort of at the election of the Commission which can either run the proceedings themselves or delegate it to the ALJs. If they delegate it to the ALJs, ultimately the determinations are made by the Commission and the final order is that of the Commission, not that of the ALJs. Having said which, I did not come prepared to discuss that at length, but I believe that that's an accurate summary. Thank you. Again, the only sort of point that I would make about free enterprise on which plaintiffs rely very heavily is that look at the Supreme Court's discussion of why it has jurisdiction in that case. It emphasizes from the basically rejects two arguments that were being made by the government in that case and it goes that we don't see the government had said well you can attack a auditing standard or something else that was issued by the Commission and the Supreme Court goes, but you don't actually have any quarrel with anything that's out there. It says that would essentially mean that you'd have to go and challenge a random rule and it also points out that there is not a congruence between the orders issued by the Accounting Board and those issued by the Commission, that not all orders of the Accounting Board were going to be encapsulated in orders of the Commission and then it projects the argument that you could go and incur a sanction and do something to induce a review. In other words, you didn't have to go out and violate the law prospectively and the court says no we don't require you to bet the farm and as the district court said here, well obviously Ms. Bebo doesn't have to induce administrative proceedings. The administrative, she's in administrative proceedings, indeed they are at this point well underway. So the reasoning of the enterprise in its crucial passages we think really focuses on the meaningful review and the order there and it was collateral in that case, I'm sorry I said my time's up. No, no, no. Please, you are in the seventh circuit. You may continue. Thank you, Your Honor. Just to finish the thought that it was collateral in that case because again you would have had to attack a proceeding which you, to attack a rule which you actually didn't have an interest in attacking and I also note that in FTC versus Standard Oil the court rejects the proposition that having to go through the administrative proceedings and your objections to those even if they're based on the alleged impropriety of having even started the proceedings was not a collateral order subject to collateral review. Actually we're going to give Ms. Maternowski a few extra minutes if you have something else you'd like to say to add. I'm happy to answer any questions that the Thank you very much, Your Honors, for the extra time. I'll just make some quick points. First, my opposing counsel brings up Standard Oil and suggests that going through a process, administrative process, is not irreparable harm. Ms. Bebo doesn't have to show irreparable harm to get into the district court. The reason that the Standard Oil court considered irreparable harm was because the respondent in that case was trying to use the APA section 10 as its cause of action to get into district court. And it was suggesting to the district court that the agency's decision at that point, the issuance of a complaint, was final enough to be a final order under the APA to get into district court. And it argued to the district court that if it was meant to go through the process to actually get a final order instead of the complaint that had been issued, it would be irreparably harmed. And the Standard Oil court said irreparable harm does not amount to finality. That's where the discussion of But nowhere has the Supreme Court said that a litigant has to show irreparable injury just to get into a district court in the first place. The claim you want, though, is injunction, is an injunction, right? We do want, that's the relief we seek ultimately in the complaint. And we also brought a motion for a preliminary injunction for which we would have to show irreparable harm. And for a permanent injunction, right? And for a permanent injunction. So I don't see how that distinction works for you. But, Your Honor, if we are successful, we also ask for a declaratory judgment. We ask for the court to declare that Dodd-Frank is unconstitutional. In which case, the procedures that have been instituted against Ms. Bebo would be instituted pursuant to unconstitutional law. And in effect should be enjoined. I mean, I don't see why you're trying to walk away from the injunctive relief that you're seeking. My point is, Your Honor, that the irreparable harm piece doesn't go to whether or not she's stated a cause of action. It goes to whether or not she's entitled to the relief. Doesn't it go to whether there's a case or controversy? If the court can't provide any meaningful relief, then there's nothing to decide, right? Well, respectfully, Your Honor, I think there is a case or controversy because she's being currently subjected to procedures that were instituted pursuant to a law that she says is unconstitutional. But, I mean, one of the elements of standing is that there's something the court can do for you, right? Right. And then declare the law unconstitutional. Which has exactly no effect unless there's an injunction, right? Right. And then stop the proceedings. And Your Honor, I won't take up too much of your time, but I will also point out that my opposing counsel said that the Supreme Court has never considered the type of claim as a dispositive factor in whether jurisdiction lies in the district court or in the agency. But that's exactly what they would consider. And that's part of the standard in every one of these cases. In Elgin and Free Enterprise and Thunder Basin, the court asked first whether there's a fairly discernible intent to limit jurisdiction, and then whether the claims at issue are of a type that Congress intended to funnel through the agency first. And I'm not suggesting that it's just because she's bringing a constitutional challenge that it's the type of claim that's meant to go to a district court. I'm suggesting that the type of claim that she brings is one to the structural authority of the SEC and not to a federal law that she's been accused of violating. And the first type, the kind she brings, is properly brought before the district court. The other type, arguably, would be brought in the agency process first. And Your Honors, I'll conclude by just... By alerting you to the procedural posture of the administrative proceedings pending against her, that she... The ALJ, in her case, heard three weeks of testimony starting on April 20th to May 7th. And for scheduling purposes, we're on a short recess now, and that hearing is scheduled to resume 11 days from now on June 15th. And so this oral argument was expedited, and we're grateful for that. And if there's anything the court can do to expedite the decision on this appeal, we would also appreciate that. Thank you very much. Thank you. Thank you, one and all. Have good trips back to where you're going. Thank you. And the case will be taken under advisement.